FILED

2017 Aug-31  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ALEXANDRE FEDOSEYEV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: 5:17-cv-00263-MMH |
| | ) | |
| ESI US R&D, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO DISMISS

ESI US R&D, Inc., by and through its counsel, moves pursuant to Rule 12(b)(6) to dismiss Alexandre Fedoseyev's Complaint. Dr. Fedoseyev has failed to state a claim upon which relief can be granted by this Court because he has previously released the claims in the Complaint in a prior settlement with CFD Research. ESI states the following grounds in support of its motion.

### FACTUAL ALLEGATIONS[1]

Dr. Fedoseyev created a computer software program that he named CNSPACK. (Doc. 10, ¶6) He completed the development of CNSPACK in 2000. *Id.* Dr. Fedoseyev has asserted his ownership of copyright in CNSPACK since 2000. *Id.* In August of 2015, he applied to register his copyright with the U.S. Copyright

---

[1] For purposes of a Rule 12(b)(6) motion to dismiss, the District Court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Thus, the factual background is taken directly from the allegations in Dr. Fedoseyev's First Amended Complaint.

Office.  *Id.*  The U.S. Copyright Office issued a certificate of registration for CNSPACK with an effective date of August 14, 2015.  *Id.*

Dr. Fedoseyev has granted non-exclusive licenses to third parties to use CNSPACK.  *Id.* at ¶7.  He has never sold or assigned his title or ownership of CNSPACK to a third party.  *Id.*  He has always retained the exclusive right to license the use of CNSPACK.  *Id.*

ESI obtained software containing CNSPACK from a third party.  *Id.* at ¶8. After asserting and resolving claims against the third party from which ESI obtained CNSPACK, Dr. Fedoseyev contacted ESI and advised it of its ownership of CNSPACK and his contention that it was infringing his copyright in CNSPACK. *Id.*

ESI did obtain software containing CNSPACK from a third party.  *Id.*  ESI purchased certain software assets from CFD Research ("CFD") as part of an Asset Purchase Agreement back in 2003.  *See* Affidavit of Sameer Singhal at ¶3, attached hereto as Exhibit A.  ESI purchased certain assets of CFD that represented CFD's commercial Computational Fluid Dynamics and related CAE software products business.  *See* Singhal Aff. at Exhibit 1, pg. 1.  The "Software Assets" were part of the "Acquired Assets" and included "all of the structure, all annotated and unannotated version of all code, including source, draft and object code and documentation relating to all of the products listed on Schedule 1.03 ("Software")

2

owned by Seller." *Id.* at §1.03.  One of the software assets listed on Schedule 1.03,

CFD-ACE™, contained a copy of CNSPACK, which had been voluntarily

embedded in CFD-ACE™ by Dr. Fedoseyev.  *Id.* at Schedule 1.03; *see also* Singhal

Aff. at ¶4.

Dr. Fedoseyev did previously assert a copyright infringement action over the

use of CNSPACK in this Court against his former employer, CFD.  (Doc. 10, ¶8).

*See also Verified Complaint in Fedoseyev v. CFD Research*, 5:15-cv-02321-HGD,

attached hereto as Exhibit B.  Dr. Fedoseyev and CFD did resolve the claim through

settlement.  (Doc. 10, ¶8).  *See also* Singhal Aff. at Exhibit 2.  Dr. Fedoseyev

dismissed his claims after the settlement was reached.  *See Fedoseyev v. CFD

Research*, 5:15-cv-02321-HGD at Doc. 22.

The settlement agreement between Dr. Fedoseyev and CFD contained the

following mutual release:

> **5.1   Releases**. Dr. Fedoseyev and CFD hereby irrevocably and
> unconditionally release, acquit, hold harmless, and forever discharge
> each other and each other's Affiliates, and their respective directors,
> owners, officers, employees, managers, members, principals, partners,
> shareholders, guarantors, agents, consultants, representatives,
> successors, assigns, subsidiaries (direct or indirect), attorneys,
> customers, and other end-users, each solely while acting in their
> capacity as such (collectively "Releasees"), from any and all claims,
> causes of action, demands, liability, losses, damages, legal fees, costs
> and any other claims of compensation or liability whatsoever, known
> or unknown, in law or equity (collectively "Claims"), wherein such
> Claims are based upon, arise out of or relate to (a) prior use or creation
> of any part of the Licensed Work by Dr. Fedoseyev and CFD while Dr.
> Fedoseyev was employed by CFD; (b) the Action or the alleged

> infringement of the Licensed Work on the basis of action by CFD; (c) the claims asserted in, and the conduct of the Action; (d) any claims that could have been asserted by any party in the Action; or (e) the conduct of settlement negotiations before the execution of this Agreement by the Parties.

*See* Singhal Aff. at Exhibit 2, ¶5.1.  The term "Licensed Work" was defined to mean "the computer program created by Dr. Fedoseyev named CNSPACK."  *Id.* at ¶1.4. The "Action" was defined to mean "the matter of *Alexandre Fedoseyev v. CFD Research Corporation*, Civil Action CV15-HGD-2321-NE."  *Id.* at pg. 1.

## STANDARD OF REVIEW

A motion pursuant to Rule 12(b)(6) challenges the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). When faced with a motion to dismiss pursuant to Rule 12(b)(6), the District Court "must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff."  *Weeks v. Wyeth, Inc.*, 120 F. Supp. 3d 1278, 1283 (M.D. Ala. 2015) (citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012)).  The consideration of a motion filed pursuant to Rule 12(b)(6) is "limited primarily to the face of the complaint and attachments thereto."  *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, n.13 (11th Cir. 2013).  In order to survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680.

The Eleventh Circuit has adopted the "incorporation by reference" doctrine when addressing Rule 12(b)(6) decisions.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (2002).  Under this doctrine, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *See id.; Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999). Undisputed, in this context, means that the authenticity of the document is not disputed.  *See Horsley*, 304 F.3d at 1134.  The District Court can also take judicial notice of public records without having to convert a motion to dismiss into a motion for summary judgment.  *See Odion v. Google, Inc.*, 628 Fed. Appx. 635, 638 (11th Cir. 2015) (noting that District Court could take judicial notice of state court records); *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (noting that District Court could take judicial notice of complaint in prior federal lawsuit).

## ARGUMENT

Dr. Fedoseyev has failed to state a claim upon which relief can be granted because he released his claims against ESI when he executed the Settlement and

5

License Agreement ("Settlement Agreement") with CFD.  Under Alabama law, release provisions, such as the one contained within the Settlement Agreement, are enforced in accordance with their plain terms.  *See* Ala. Code § 12-21-109 ("All receipts, releases and discharges in writing . . . must have effect according to their terms and the intentions of the parties thereto."); *American Homes & Land Corp. v. C.A. Murren & Sons Co.*, 990 So. 2d 871, 876 (Ala. 2008) ("[A]bsent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from what appears in the four corners of the document itself . . . ."); *Nix v. Henry C. Beck Co.*, 572 So. 2d 1214, 1217 (Ala. 1990) ("If the express provisions of a release are unambiguous, then, in accordance with contract principles generally, they will be taken as expressing the intent of the parties.").  Federal courts have dismissed a plaintiff's claims as barred by a release at the motion to dismiss stage.  *See, e.g.*, *Kobatake v. E.I. DuPont De Nemours and Co.*, 162 F.3d 619 (11th Cir. 1998) (affirming grant of motion to dismiss plaintiffs' claims as barred by previously executed settlement agreements and releases); *Branch Banking & Trust Co. v. Howard*, 2013 WL 172903, at *2 (S.D. Ala. Jan. 16, 2013) (granting motion to dismiss counterclaims against bank based upon release provision contained in forbearance agreement).  *See also Synovus Bank v. Summerford*, 2013 WL 2106739, at *3 (N.D. Ala. May 10, 2013) (granting motion

for judgment on the pleadings as to counterclaims in existence at the time agreement was executed on the grounds that such claims were barred by release).

In Section 5.1 of the Settlement Agreement, Dr. Fedoseyev "irrevocably and unconditionally" released and forever discharged CFD's assigns, customers, and other end-users from "any and all claims" that arise out of or relate to certain scenarios. *See* Singhal Aff. at Exhibit 2, ¶5.1. Of particular importance to this dispute, Dr. Fedoseyev released CFD's assigns, customers, and end-users from all claims that arise out of or relate to:

> (a) prior use or creation of any part of the Licensed Work by Dr. Fedoseyev and CFD while Dr. Fedoseyev was employed by CFD; (b) the Action or the alleged infringement of the Licensed Work on the basis of action by CFD; (c) the claims asserted in, and the conduct of the Action; [and] (d) any claims that could have been asserted by any party in the Action . . . .

*Id.* As discussed below, ESI possession and use of CNSPACK comes within the scope of the mutual release in the Settlement Agreement.

First, ESI is one of CFD's assigns, customers, or end-users because of its purchase of the "Software Assets" of CFD. "Assigns" is not a defined term in the Settlement Agreement between Dr. Fedoseyev and CFD. Assign is defined in Black's Law Dictionary to mean "[t]o make or set over to another; to transfer; as to assign property; or some interest therein."[2] The lay definition of assign in Merriam-

---

[2] *See* What is ASSIGN, V? definition of ASSIGN, V (Black's Law Dictionary), THE LAW DICTIONARY (2011), http://thelawdictionary.org/assign-v/ (last visited Aug. 30, 2017). Similarly,

3/40821952.1

Webster's Dictionary is very similar: "to transfer (property) to another especially in trust or for the benefit of creditors."[3]

A review of the terms of the Asset Purchase Agreement demonstrates that ESI was an assignee of CFD.  CFD transferred or sold "certain assets of Seller that represent Seller's commercial Computational Fluid Dynamics and related CAE software products business."  *See* Singhal Aff. at Exhibit 1, pg. 1.  Specifically, ESI agreed to purchase the "Acquired Assets" from CFD.  *Id.* at ¶2.1.  The "Acquired Assets" included the "Software Assets" of CFD.  *Id.* at ¶1.01.  The "Software Assets" purchased by ESI included "all of the structure, all annotated and unannotated versions of all code, including source, draft and object code and documentation relating to all of the products listed on Schedule 1.03 ("Software") owned by Seller."  *Id.* at ¶1.03.  One of the "Software Assets" listed on Schedule 1.03, CFD-ACE™, contained a copy of CNSPACK.  *Id.* at Schedule 1.03; *see also* Singhal Aff. at ¶4.

Furthermore, CFD and ESI characterized this transaction as an assignment. In Section 2.01, CFD agreed that it would "sell, transfer, convey, **assign** and deliver" to ESI the Acquired Assets.  *Id.* at ¶2.1 (emphasis provided).  In Section 2.02, ESI

---

the term "assign" is defined on Law.com to mean "1) v. to transfer to another person any asset such as real property or a valuable right such as a contract or promissory note. 2) n. the person (assignee) who receives a piece of property by purchase, gift, or by will."  *See* Legal Dictionary – Law.com, LAW.COM LEGAL DICTIONARY, http://dictionary.law.com/Default.aspx?selected=2448 (last visited Aug. 30, 2017).

[3] *See* Assign, MERRIAM-WEBSTER,  https://www.merriam-webster.com/dictionary/assign  (last visited Aug. 30, 2017.

agreed to pay consideration for the "sale, assignment, transfer and delivery of the Acquired Assets." *Id.* at ¶2.2 (emphasis provided).  Furthermore, in the Bill of Sale, CFD as "Assignor" did "assign, grant, bargain and sell" to ESI as "Assignee" all "right, title, and interest in and to the Acquired Assets."  *See* Singhal Aff. at Exhibit 3.  A plain reading of the Asset Purchase Agreement and Bill of Sale leads to the conclusion that ESI is an assignee of CFD.

For similar reasons ESI is also a "customer" and "end-user."  Again, Dr. Fedoseyev and CFD did not define these terms in the Settlement Agreement.  The term "customer" is defined in Merriam-Webster Dictionary to mean "one that purchases a commodity or service."[4]  The term "end user" is defined in this dictionary to mean "the ultimate consumer of a finished product."[5]  ESI qualifies as a "customer" of CFD because it purchased a commodity, *e.g.*, the "Software Assets," from CFD.  In addition, ESI is a "customer" because it agreed to issue purchase orders to CFD for software and database services, support, and maintenance.  *See*

---

[4]  *See* Customer, MERRIAM-WEBSTER,  https://www.merriam-webster.com/dictionary/customer (last visited Aug. 30, 2017).

[5]  *See* End User, MERRIAM-WEBSTER,  https://www.merriam-webster.com/dictionary/ed%20user (last visited Aug. 30, 2017).  The definitions of "customer" and "end-user" are consistent with those found in other dictionaries.  For instance, "customer" is defined in the Cambridge Dictionary to mean "a person who buys goods or a service."  *See* Definition of "customer" – English Dictionary, CUSTOMER DEFINITION IN THE CAMBRIDGE ENGLISH DICTIONARY, http://dictionary.cambridge.org/us/dictionary/english/customer (last visited Aug. 30, 2017).  The term "end user" is defined the Oxford Dictionary to mean "[t]he person who actually uses a product."  *See* end user – definition of end user in English │ Oxford Dictionaries, OXFORD DICTIONARIES │ English, https://en.oxforddictionaries.com/definition/end_user (last visited Aug. 30, 2017).

3/40821952.1

Singhal Aff. at Exhibit 1, ¶8.08.  Likewise, ESI is an "end-user" of the "Software Assets."  CFD agreed to deliver and install the "Software" described in Schedule 1.03 on ESI's servers in Paris, France.  *Id.* at ¶9.09.  ESI would certainly be the entity using the product after the transfer from CFD.

Since ESI is an assignee, customer, or end-user, Dr. Fedoseyev has agreed to release and forever discharge ESI from all claims, known or unknown, wherein such claims are based upon, arise out of, or relate to "(a) prior use or creation of any part of the Licensed Work by Dr. Fedoseyev and CFD while Dr. Fedoseyev was employed by CFD."  *See* Singhal Aff. at Exhibit 1, ¶5.1.  As discussed below, Dr. Fedoseyev's present claims have been released because they arise out of CFD's prior use of the Licensed Work, *i.e.*, CNSPACK, while Dr. Fedoseyev was employed by CFD.

Dr. Fedoseyev has pled in the First Amended Complaint that he "assert[ed] and resolv[ed] claims against the third party from which ESI US R&D obtained CNSPACK."  (Doc. 10, ¶8)  The third party Dr. Fedoseyev refers to here is CFD. Dr. Fedoseyev filed an earlier lawsuit against CFD for copyright infringement related to its use of CNSPACK.  *See* Exhibit B.  Dr. Fedoseyev alleged in the Verified Complaint that he "was hired by CFD as a Principal Engineer in 2001, and worked in that or in similar capacities for CFD until early 2015."  *Id.* at ¶8.  He further alleged that CFD was aware of his creation and ownership of CNSPACK and

3/40821952.1

requested permission to test CNSPACK. *Id.* at ¶¶8-9. Dr. Fedoseyev pled that CFD did "integrate CNSPACK into its own software library." *Id.* at ¶10. Dr. Fedoseyev claimed that CFD failed to license CNSPACK or compensate him for its use.[6] *Id.*

An analysis of these "verified" facts demonstrates that Dr. Fedoseyev has released his current claims against ESI. The claims have been released because they arise out of CFD's prior use of CNSPACK while Dr. Fedoseyev was employed by CFD. Dr. Fedoseyev pled in the Verified Complaint against CFD that he was employed at CFD from 2001 until 2015. *Id.* at ¶8. He further pled that CFD incorporated CNSPACK into its software library. *Id.* at ¶10. CNSPACK was incorporated into CFD-ACE™. *See* Singhal Aff. at ¶4. This program was one of the Software Assets sold by CFD to ESI as part of the Asset Purchase Agreement on December 20, 2003. *See* Singhal Aff. at ¶4 and Exhibit 1 at Schedule 1.03. CFD's sale of the "Software Assets" containing CNSPACK is a prior use of CNSPACK by CFD that occurred during Dr. Fedoseyev's employment with CFD. Thus, he has forever released and discharged ESI from any claims that arise out or relate to this transaction.

---

[6] Dr. Fedoseyev filed a Verified Complaint against CFD. Under penalty of perjury, Dr. Fedoseyev verified that "[t]he facts stated there in are, to the best of my knowledge, true and correct, excepting only for any made on information and belief, which statements I believe to be true and correct." *See* Exhibit B at pg. 8.

3/40821952.1

In addition, Dr. Fedoseyev has released ESI from all claims that arise out or relate to "(b) the Action or the alleged infringement of the Licensed Work on the basis of action by CFD; [and] (c) the claims asserted in, and the conduct of the Action." The "Action" refers to Dr. Fedoseyev's Verified Complaint against CFD. *See* Singhal Aff. at Exhibit 2, pg. 1. In the Verified Complaint against CFD, Dr. Fedoseyev pled that he agreed to allow CFD to use CNSPACK for "internal purposes only, and on the condition that CFD would reach agreement with him on the payment of a reasonable license fee for any use of CNSPACK in or with software applied to serve CFD's customers." *See* Exhibit B at ¶9. In addition, he pled that "[h]e never gave CFD permission to use CNSPACK for the purposes of fulfilling its obligations to government or commercial customers, or to market or provide its services using CNSPACK." *Id.* Dr. Fedoseyev pled that CFD infringed his copyright in CNSPACK. *Id.* at ¶14. He further pled that CFD used CNSPACK for its purposes and created a reasonable expectation that he would receive fair compensation. *Id.* at ¶19.

Dr. Fedoseyev's current claims against ESI have been released because they arise out of and relate to the allegations in the Verified Complaint and CFD's alleged infringement of CNSPACK. As discussed above, Dr. Fedoseyev's initial lawsuit against CFD relates to CFD's alleged copyright infringement. CFD would have certainly infringed Dr. Fedoseyev's copyright in CNSPACK if it copied the software

program without permission or consent and transferred it to ESI as part of the Asset Purchase Agreement transaction.  Dr. Fedoseyev's current claims against ESI plainly arises out or relates to CFD's alleged copyright infringement.  Unfortunately for Dr. Fedoseyev, he has released and forever discharged such claims as part of the settlement with CFD.

Finally, Dr. Fedoseyev has released all claims that arise out of or relate to "(d) any claim that could have been asserted by any party in the Action."  The release extends to "any and all claims . . . known or unknown."  *See* Singhal Aff. at Exhibit 2, ¶5.1.  Dr. Fedoseyev definitely could have asserted a copyright infringement claim against ESI in the original action against CFD.[7]  His copyright claims against both parties involve the same copyright – the CNSPACK copyright.  The theory against both parties would have been identical – both ESI and CFD were using CNSPACK without his permission and without paying compensation.  In addition, he could have asserted in his breach of contract claim against CFD that it was a breach for CFD to sell the "Software Assets" containing CNSPACK to ESI.  Since Dr. Fedoseyev could have asserted these claims in the original action against CFD, his current claims against ESI have been released and forever discharged.

---

[7] It is important to note that Dr. Fedoseyev and CFD agreed that the mutual release would apply to any claim that "**could** have been asserted."  They did not limit the scope of the release to "compulsory claims" that had to be asserted in the underlying action.

## CONCLUSION

Dr. Fedoseyev has previously released the claims that he now attempts to assert against ESI.  Thus, he has failed to state a claim upon which relief can be granted by this Court.  Consequently, ESI's motion to dismiss is due to be granted.


Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP


s/ Daniel Kaufmann

Daniel Kaufmann (KAU010)
Frank M. Caprio (CAP005)
200 Clinton Avenue West, Suite 900
Huntsville, AL  35801
Telephone: (256) 517-5100
Facsimile: (256) 517-5200
E-Mail:fcaprio@bradley.com
       dkaufmann@bradley.com
*Attorneys for Defendant,*
*ESI US R&D, Inc.*

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey G. Blackwell, Esquire
BLACKWELL LAW FIRM
120 Holmes Avenue, Suite 401
Huntsville, Al  35801

Jeffrey L. Squires, Esquire
LAW OFFICES OF PEACOCK MYERS PC
201 Third Street NW, Suite 1340
Albuquerque, NM  87102
*Attorneys for Plaintiff*

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE

s/ Daniel Kaufmann
Of Counsel

15

3/40821952.1